UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FIRAS SHALABI D/B/A ZEEN
WIRELESS 2, LLC, ZEEN
WIRELESS 3, LLC, ZEEN                                CIVIL ACTION
WIRELESS 7, LLC, ZEEN
WIRELESS 13, LLC, ZEEN                               NO. 22-3589
WIRELESS 14, LLC, EXPRESSWAY
WIRELESS, LLC, AND                                   SECTION: "J"(3)
EXPRESSWAY WIRELESS 2, LLC.

VERSUS

NAUTILUS INSURANCE COMPANY
AND UNDERWRITERS AT LLOYD'S
LONDON

**ORDER AND REASONS**

Before the Court are a *Rule 21 Motion to Drop Defendant* **(Rec. Doc. 9)** filed by Defendants, Nautilus Insurance Company ("Nautilus") and Certain Underwriters at Lloyd's, London ("Lloyds") and a *Motion to Remand* **(Rec. Doc. 10)** filed by Plaintiff, Firas Shalabi d/b/a Zeen Wireless 2, LLC, Zeen Wireless 3, LLC, Zeen Wireless 7, LLC, Zeen Wireless 13, LLC, Zeen Wireless 14, LLC, Expressway Wireless, LLC, and Expressway Wireless 2, LLC. Both motions are opposed (Rec. Docs. 13, 14), and Defendants also filed a reply brief in support of their motion to drop (Rec. Doc. 17). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion to drop Lloyds **(Rec. Doc. 9)** should be **DENIED** and the motion to remand **(Rec. Doc. 10)** should be **GRANTED.**

**FACTS AND PROCEDURAL BACKGROUND**

This case arises out of a claim for alleged damage to Plaintiffs' seven parcels of property (the "Properties") as a result of Hurricane Ida. On August 29, 2021, Hurricane Ida made landfall in Port Fourchon, Louisiana as a Category 4 Hurricane, and the storm traveled north over the New Orleans metropolitan area. Plaintiffs allege that the Properties sustained damage to their roofs, exteriors, and interiors, causing business interruption, loss of inventory, and other losses. At the time, six of the Properties were insured by a Nautilus Insurance Company ("Nautilus") policy, and one of the Properties was insured by Certain Underwriters and Lloyd's, London Subscribing to Policy No. AP-CF-A0629 ("Lloyds").

Each of the seven Properties is leased by a different Plaintiff limited liability company (i.e. Zeen Wireless 2, LLC, Zeen Wireless 3, LLC, Zeen Wireless 7, LLC, Zeen Wireless 13, LLC, Zeen Wireless 14, LLC, Expressway Wireless, LLC, and Expressway Wireless 2, LLC). Firas Shalabi, a citizen of Louisiana, is the sole member of two of the companies. The other five companies have, in addition to Firas Shalabi, one or two other individual members, all of whom are Louisiana citizens.

On August 16, 2022, Plaintiffs filed suit in the Civil District Court for the Parish of Orleans, alleging that Nautilus and Lloyds breached their insurance policies by failing to timely and adequately pay for losses, misrepresenting the terms of the insurance policies, and conducting the investigations of claims in bad faith. Nautilus and Lloyds removed the case to this Court on September 30, 2022 on diversity grounds. The notice of removal alleges complete diversity between Plaintiff

and Nautilus, but it contends that Lloyds was misjoined and should not be considered for purposes of diversity jurisdiction.

Defendant Nautilus is an Arizona corporation with its principal place of business in Arizona. Defendant Lloyds is a surplus lines insurer. Defendants did not provide Lloyds' citizenship in its notice of removal and instead simply stated that Lloyds was misjoined and should not be considered for purposes of diversity jurisdiction. In the instant motion to drop, Lloyds argues that it should be dropped as a defendant pursuant to Federal Rule of Civil Procedure 21, because it is a non-diverse party and has no connection to the claims handled by Nautilus.

However, in the instant motion to remand, Plaintiffs argue that, because Lloyds is non-diverse, this Court lacks jurisdiction over this matter and should remand the entire case to state court. Plaintiffs also contend that both Nautilus's and Lloyd's policies list Shalabi as the named insured, and similarities in facts between the claims against the two defendants create a sufficient community of interest to try the cases together. The Court ordered Defendants to brief the citizenship of all the parties by January 11, 2023 and scheduled oral argument on the motions for January 18, 2023.

## **LEGAL STANDARD**

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a) (2011). "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship

between the parties." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1332(a)). The amount in controversy required by § 1332(a) is currently $75,000. *Id.* The court considers the jurisdictional facts that support removal as of the time of removal. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). Because removal raises significant federalism concerns, any doubt about the propriety of removal must be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007). The removing party has the burden to show "that federal jurisdiction exists and that removal was proper. *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014).

Section 1441(b) specifies that an action otherwise removable solely on the basis of diversity jurisdiction may not be removed if any "properly joined" defendant is a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b)(2). Thus, a properly joined in-state[1] defendant will prevent removal, but an improperly joined in-state defendant will not. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004). The Fifth Circuit has recognized two ways for a removing party to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party." *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Federal Rule of Civil Procedure 21 provides "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time,

---

[1] The term "in-state" is used to describe a defendant who is a citizen of the state where the action was brought, preventing removal under § 1441(b), as well as a defendant who would be non-diverse from a plaintiff, destroying diversity jurisdiction under § 1332(a).

on just terms, add or drop a party. The court may also sever any claim against any party." Fed. R. Civ. P. 21. Because "Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010). Defendants may be joined if (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and (2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2). The Supreme Court explained that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). The idea is that joinder of all relevant parties promotes judicial economy. *See id.*; *Acevedo*, 600 F.3d at 522. However, the court has discretion to refuse joinder to avoid prejudice, ensure fairness, and promote judicial economy. *Acevedo*, 600 F.3d at 522.

## DISCUSSION

### I. WHETHER THE CASE SHOULD BE REMANDED

Diversity jurisdiction exists where the matter in controversy exceeds $75,000 and is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). Although the outcome of Lloyds's motion to drop may impact the determination of complete diversity, the Court must determine jurisdiction at the time of removal, not after subsequent events such as a federal court severance or Rule 12(b)(6) challenge.

*Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806 (2021) (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 137 (5th Cir. 2016)). Here, dropping Lloyds as a defendant "does not (and cannot) create jurisdiction that otherwise would not exist. Indeed, otherwise a diverse defendant could almost always remove and then simply sever the non-diverse defendant to remain in federal court." *Id.*

In *Williams*, the Fifth Circuit reversed the District Court's denial of a motion to remand and remanded the case to state court, holding that misjoinder issues should be addressed in state court prior to removal. *Williams*, 18 F.4th at 817-18. In that class action case against multiple defendants, following class certification and the subsequent long procedural history, a diverse defendant removed the case to federal court on the basis of diversity jurisdiction. *Id.* at 810. The class moved to remand because of the lack of complete diversity. *Id.* The district court granted the motion in part, retaining jurisdiction over the claims against the diverse defendant and remanding the claims against the non-diverse defendant to state court based on improper joinder. *Id.* at 810-811. After determining that the plaintiffs had a possibility of recovery against the non-diverse defendants, the Fifth Circuit concluded that the improper joinder exception did not apply. *Id.* at 813-814. Further, the court clarified that the Fifth Circuit had "never held that a defendant can remove a case based on party joinder issues in state court," instead directing that "*any* viable cause of action against a diversity-destroying party requires the entire case to be remanded." *Id.* at 815 (emphasis in original). Because severing the misjoined, non-diverse party cannot create jurisdiction that otherwise would not exist, the Fifth

Circuit directed the district court to remand the case to state court and directed the defendants to move to sever in state court if the claims against the two defendants had actually been misjoined. *Id.* at 817-18.

The *Williams* framework for determining the removability of a case involving "plausible but potentially misjoined claims between non-diverse parties" is thus summarized as: (1) the defendant would move to sever those claims on misjoinder grounds before removal and then (2) the state court grants the motion and the case becomes removable, or the state court denies the motion and the case remains non-removable. *Id.* In this case, Defendants did not follow this framework. In their notice of removal, Defendants contend that Lloyds was misjoined, so should not be considered for purposes of diversity jurisdiction. (Rec. Doc. 1, at 6). However, ignoring Lloyds' citizenship would contradict the established guidance that federal courts should determine jurisdiction at the time of removal. Additionally, before they removed the case to this Court, Defendants did not move to sever their claims on the grounds of misjoinder so that the state court could rule on the motion.

Further, in their briefing to the Court regarding each party's citizenship, Defendants ignore the Court's order to "brief the citizenship particulars of *all* the parties." (Rec. Doc. 18) (emphasis added). Instead, in their brief, Defendants repeat their argument that "Underwriters' citizenship is immaterial to this Court's jurisdiction over Plaintiffs' claims against Nautilus, as Underwriters should be dropped from this suit pursuant to Fed. R. Civ. Proc. 21 as misjoined." (Rec. Doc. 20, at 2). The brief provides the reasoning for citizenship for each Plaintiff LLC

(Louisiana) and Nautilus (Arizona), but it fails to respond to the Court's Order to brief Lloyds' citizenship.

The Court disagrees that Lloyds' citizenship is immaterial to its jurisdiction, because of the well-established rule that diversity jurisdiction depends on the citizenship of the parties at the time the action is brought. The Court's jurisdiction must be determined before taking further action, such as ruling on the motion to drop. Thus, as the removing party bearing the burden of showing that federal jurisdiction exists and removal was proper, Defendants must show that complete diversity of citizenship exists, including by alleging the citizenship of Defendant Lloyds. Regarding Lloyds' citizenship, the Fifth Circuit has explained:

> Lloyds of London is not an insurance company but rather a self-regulating entity which operates and controls an insurance market. The Lloyd's entity provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's. Thus, a policyholder insures at Lloyd's but not with Lloyd's.
>
> The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment. Lloyd's requires Names to pay a membership fee, keep certain deposits at Lloyd's, and possess a certain degree of financial wealth. Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an underwriter. Typically hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint.
>
> Most Names or investors do not actively participate in the insurance market on a day to day basis. Rather, the business of insuring risk at Lloyd's is carried on by groups of Names called "Syndicates." In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a "Syndicate" which will in turn subscribe to policies on behalf of all Names in the Syndicate. A typical Lloyd's policy has multiple Syndicates which collectively are responsible for 100

>percent of the coverage provided by a policy. The Syndicates themselves have been said to have no independent legal identity. Thus, a Syndicate is a creature of administrative convenience through which individual investors can subscribe to a Lloyd's policy. A Syndicate bears no liability for the risk on a Lloyd's policy. Rather, all liability is born by the individual Names who belong to the various Syndicates that have subscribed to a policy.

*Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857–58 (5th Cir. 2003) (internal citations omitted). Therefore, the "Names" are the parties to this action, and their citizenship must be set forth by Defendants in order to remove the case to federal court, or in this case, defeat a motion to remand. Defendants failed to provide the citizenship of the Names in their Notice of Removal and in their supplemental citizenship briefing. However, Defendants' Motion to Drop admits that Lloyds is a non-diverse Defendant, despite refusing to provide a specific state of citizenship for the Names. *See* (Rec. Doc. 9-2, at 1, 3, 6) (describing Lloyds as "non-diverse Underwriters"). Therefore, complete diversity does not exist, and this Court does not have jurisdiction over this case.

## II. WHETHER LLOYDS SHOULD BE DROPPED

Lloyds contends that this Court should drop it as a misjoined defendant because no factual or legal overlap exists between Plaintiffs' claims against Lloyds and Plaintiffs' claims against Nautilus. (Rec. Doc. 9-2, at 5). Lloyds does not allege that plaintiffs have improperly joined it, which would require proving actual fraud in the pleadings or the inability to establish a cause of action against them. However, Lloyds argues that the Court should simply disregard its citizenship as a misjoined defendant. The Court notes that this argument misinterprets the law; Courts disregard a non-diverse defendant's citizenship in the case of improper joinder, rather

than for procedural misjoinder. See *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 390 (5th Cir.2000); *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 573 (5th Cir.2004) (en banc).

Regardless, because the Court finds that it does not have jurisdiction over this case, it cannot grant the motion to drop.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' *Motion to Remand* **(Rec. Doc. 10)** is **GRANTED** and the case is hereby **REMANDED** to the Civil District Court for the Parish of Orleans.

**IT IS FURTHER ORDERED** that Defendant's *Rule 21 Motion to Drop Defendant* **(Rec. Doc. 9)** is **DENIED** and Oral Argument on the motions is **CANCELLED.**

New Orleans, Louisiana, this 12th day of January, 2023.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE